25 F.3d 1041
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Reginald BAILEY, a/k/a Reggie, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Leo JOHNSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Patricia Ann THURMOND, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tonya JOHNSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Valerie Denise WINSTON, a/k/a Val, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald Sheridan KELLEY, a/k/a Boobie, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Levi H. WINSTON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Reginald BAILEY, a/k/a Reggie, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Patricia Ann THURMOND, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Valerie Denise WINSTON, a/k/a Val, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Leo JOHNSON, Defendant-Appellant.
 Nos. 93-5645, 93-5646, 93-5647, 93-5648, 93-5649, 93-5650,
93-5651, 93-5680, 93-5681.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 11, 1994.
Decided: May 18, 1994.
 
 Appeals from the United States District Court for the Southern District of West Virginia, at Huntington. Robert J. Staker, District Judge. (CR-91-189-3)
 Fred B. Westfall, Jr., Huddleston, Bolen, Beatty, Porter & Copen, Huntington, West Virginia; William D. Levine, St. Clair & Levine, Huntington, West Virginia; George A. Mills, III, Huntington, West Virginia; Robert Clarke Vandervort, Robinson & McElwee, Charleston, West Virginia, for Appellants.
 Paul Thomas Farrell, Assistant United States Attorney, Huntington, West Virginia, for Appellee.
 J.William St.Clair, St. Clair & Levine, Huntington, West Virginia, for Appellant Thurmond;
 Jane Charnock, Charnock & Charnock, Charleston, West Virginia, for Appellant Kelley;
 Ronald James Flora, Milton, West Virginia, for Appellant Michael Leo Johnson.
 CharlesT. Miller, United States Attorney, Huntington, West Virginia, for Appellee.
 Before WILKINS, LUTTIG, and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Reginald Bailey, Michael Leo Johnson, Tonya Johnson (Johnson), Patricia Ann Thurmond, Valerie Denise Winston (Winston), Levi H. Winston, and Ronald Sheridan Kelley were convicted of conspiracy to possess with the intent to distribute cocaine and cocaine base. See 21 U.S.C.A. Sec. 846 (West Supp.1994). In addition, Kelley was convicted of distribution of cocaine base, see 21 U.S.C.A. Sec. 841(a)(1) (West 1981), and Winston was convicted of possession with the intent to distribute cocaine, see id. On appeal, Appellants raise numerous challenges to their convictions and sentences. Of these, only two merit discussion: (1) whether there was sufficient evidence to support Winston's conviction for possession with the intent to distribute cocaine; and (2) whether the district court committed reversible error in admitting testimony of a coconspirator identifying Thurmond as a source of cocaine. Finding no reversible error, we affirm.
 
 I.
 
 2
 At trial, the Government sought to prove that Appellants conspired to transport cocaine and cocaine base from Columbus, Ohio to Huntington, West Virginia and then to distribute the controlled substances in the Huntington area. As evidence of Winston's and Thurmond's involvement, the Government offered the following testimony. Six individuals testified that they purchased controlled substances from Winston. Mercer Turner stated that she purchased cocaine base from Winston on four or five occasions and that during one of these she saw Winston with a pill bottle full of cocaine base. Tammy Lindsey testified that she purchased cocaine base from Winston 15 to 20 times. Richard Gravely estimated that he purchased between $1,000 and $2,000 worth of cocaine base from Winston. Vernon Bradley testified that Winston and Johnson sold him approximately $200 worth of cocaine base. Sandra Johnson stated that she twice purchased cocaine base from Winston, and Helen Hall testified that she purchased cocaine base from Winston on one occasion.
 
 
 3
 Norvell Crump, who provided protection for Winston and Johnson while they distributed controlled substances in the Huntington area, testified that he was acting as their bodyguard when he overheard Winston and Johnson tell a customer that they could not "front" drugs to customers because they were selling for Levi Winston. Crump also testified that during a visit to the residence of Rodney Goodson, a fugitive coconspirator, he observed Goodson with approximately five ounces of cocaine. Crump questioned Goodson regarding the source of the cocaine, and Goodson stated that it "came from Patricia." According to Crump, Patricia Thurmond was present when this statement was made, but did not respond.
 
 
 4
 Jerra Collins, another coconspirator, testified that when she first visited the apartment shared by Thurmond and Levi Winston to discuss distributing cocaine and cocaine base in Huntington, Thurmond was present. On a second trip to the apartment, Collins observed Levi Winston with a jar in his hands, apparently cooling cocaine base. In plain view in the kitchen, Collins also observed a set of "cocaine scales." Again, Thurmond was present.
 
 
 5
 Finally, Officer Combs of the Huntington, West Virginia Police Department testified about the events leading to the arrest of Winston for possession with the intent to distribute. He stated that early one morning he and another officer stopped a vehicle in which she was a passenger. After they observed ammunition in the vehicle, they searched Winston and discovered $971 in cash and several rounds of live ammunition on her person. In her purse, they found an additional $2,600 in cash and .75 grams of cocaine. Special Agent Turner later testified that .75 grams was a distributable quantity of cocaine.
 
 
 6
 In addition to the testimony of these witnesses, the Government introduced Western Union records of 26 wire transfers between Huntington, West Virginia and Columbus, Ohio during the time period of the conspiracy. Patricia Thurmond was listed as the payee on three of these transfers.
 
 II.
 
 7
 In reviewing the sufficiency of the evidence to support Winston's conviction for possession of cocaine with the intent to distribute, this court must view the evidence in the light most favorable to the Government and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991). Possession of a controlled substance with the intent to distribute requires proof that an individual "(1) knowingly (2) possessed a controlled substance (3) with the intent to distribute it." United States v. Samad, 754 F.2d 1091, 1096 (4th Cir.1984); see 21 U.S.C.A. Sec. 841(a)(1). Winston concedes that she knowingly possessed .75 grams of cocaine, but contends that the quantity of cocaine she possessed is insufficient to support an inference that she intended to distribute it.
 
 
 8
 Generally, intent to distribute a controlled substance may be inferred from the quantity of the substance in an individual's possession, Samad, 754 F.2d at 1096, but "possession of a small amount of a controlled substance, standing alone, [provides] an insufficient basis from which an intent to distribute may be inferred," United States v. Franklin, 728 F.2d 994, 999 (8th Cir.1984). However, intent to distribute may also be established by other probative evidence such as possession of a large sum of cash, see United States v. Johnson, 977 F.2d 457, 458 (8th Cir.1992) (per curiam), testimony of a pattern of drug dealing, United States v. Gordon, 923 F.2d 123, 125-26 (8th Cir.1991), or possession of a firearm, see United States v. Savinovich, 845 F.2d 834, 837 (9th Cir.), cert. denied, 488 U.S. 943 (1988).
 
 
 9
 The evidence offered against Winston was not limited to a showing that she possessed a small, but distributable, quantity of cocaine. Officer Combs stated that in addition to the cocaine, Winston possessed approximately $3,500 in cash and several rounds of live ammunition. Crump also testified that he provided protection to Winston while she distributed controlled substances, and six other witnesses testified that they had purchased cocaine base from Winston. Cumulatively, this evidence establishes a sufficient basis from which a rational trier of fact could find beyond a reasonable doubt that Winston intended to distribute the .75 grams of cocaine discovered in her possession.
 
 III.
 
 10
 We next address Thurmond's contention that the district court committed reversible error by allowing Crump to testify that Goodson identified Thurmond as his source of cocaine. Federal Rule of Evidence 801(d)(2)(B) provides that an out-of-court statement offered against a party is not hearsay if "the party has manifested an adoption or belief in its truth." Fed.R.Evid. 801(d)(2)(B). A party's adoption of a statement may be exhibited by words or conduct. 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence, p 801(d)(2)(B) at 801-257 (1993). Thus, "when an accusatory statement is made in an individual's presence and hearing, and he understands and has an opportunity to deny it, the statement and his failure to deny it are admissible against him." United States v. Moore, 522 F.2d 1068, 1075 (9th Cir.1975), cert. denied, 423 U.S. 1049 (1976). However, prior to admitting such a statement, the court should conduct a preliminary inquiry to determine whether under the circumstances an innocent person would normally respond to the statement sought to be introduced and whether there are sufficient foundational facts from which a jury could infer that the party heard, understood, and acquiesced in the statement. United States v. Carter, 760 F.2d 1568, 1579 (11th Cir.1985). Thurmond argues that the district court erred in admitting Crump's statement because the court did not establish with sufficient certainty that Thurmond heard, understood, and acquiesced in Goodson's statement. She further asserts that admitting the statement could not be harmless error because it was the only evidence indicating that she knowingly participated in the conspiracy.
 
 
 11
 The decision of the district court to admit Crump's testimony is reviewed for an abuse of discretion. See United States v. D'Anjou, 16 F.3d 604, 610 (4th Cir.1994). When Crump testified that Goodson said he had obtained the cocaine "from Patricia," the Government asked Crump whether Patricia Thurmond was in the apartment at the time the statement was made. Crump responded that she was. The Government then asked Crump whether Thurmond was "present there" when the statement was made. Again, Crump stated that she was. The district court explained that it interpreted this testimony as indicating that Thurmond was "standing right there" when the statement was made. The court then concluded that based on her proximity to Crump and Goodson, the jury reasonably could infer that Thurmond heard and understood the statement. From her silence, the district court concluded that the jury also could infer that Thurmond acquiesced in the statement.
 
 
 12
 We recognize that both the Government and the district court could have elicited more detailed information about the circumstances surrounding Goodson's statement. But, we cannot conclude that the district court abused its discretion in finding that a jury reasonably could infer from Crump's testimony that Thurmond heard, understood, and acquiesced in Goodson's statement.
 
 
 13
 In any event, if the admission of the statement was improper, the error was harmless. Collins testified that Thurmond was present in the apartment shared by Thurmond and Levi Winston, the alleged kingpin of the conspiracy, when the distribution of cocaine and cocaine base was discussed and when cocaine was processed into cocaine base. Thurmond also admitted that she received three wire transfers from individuals involved in the conspiracy. In light of this evidence of her knowing participation in the conspiracy, we can state "with fair assurance ... that the judgment was not substantially swayed by the" admission of Crump's testimony that Goodson identified Thurmond as his source of five ounces of cocaine. Kotteakos v. United States, 328 U.S. 750, 765 (1946).
 
 IV.
 
 14
 Finally, all seven Appellants challenge the sufficiency of the evidence to support their conspiracy convictions and assert that the instructions to the jury on the elements of conspiracy were erroneous and misleading. They also maintain that the district court improperly admitted evidence of drug transactions that were not a part of the conspiracy. Reginald Bailey contends that the testimony of Jerra Collins was admitted in violation of the spousal privilege, and each Defendant raises allegations of sentencing error. We have reviewed each of these contentions and conclude that they are without merit. Accordingly, we affirm.
 
 AFFIRMED